Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 126 | **DATE** | 10/21/2003 |
| **CASE TITLE** | USA vs. Ross A. Caputo, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss the indictment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 22 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 50 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 03 CR 0126 |
| | ) | |
| ROSS A. CAPUTO, | ) | Judge Ruben Castillo |
| ROBERT M. RILEY, | ) | |
| MARK E. SCHMITT, and | ) | |
| MARILYN M. LYNCH | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before this Court is Defendants' motion to dismiss the indictment. (R. 24-1, Defs.' Mot. to Dismiss.) Defendants' motion to dismiss raises four arguments: (1) the Food and Drug Administration's ("FDA") regulatory scheme violates the Due Process Clause because it is too ambiguous to afford proper notice of prohibited conduct; (2) the conspiracy count is duplicitous; (3) FDA prohibitions on manufacturer promotion of off-label uses violates the First Amendment; and (4) the false-statement count is based on fundamentally ambiguous questions. For the reasons provided below, we deny Defendants' motion to dismiss in its entirety.

## RELEVANT FACTS

On February 4, 2003, the Government brought a nineteen-count indictment against Ross A. Caputo, Robert M. Riley, Mark E. Schmitt, and Marilyn M. Lynch. (R. 1, Indictment.) The nineteen counts were: conspiracy (count one); fraud (count two); mail fraud (counts three through five); wire fraud (counts six through nine); false statement (counts ten through twelve); and the introduction of an adulterated or misbranded device into interstate commerce (counts thirteen through nineteen).

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-97 (2003), and the corresponding FDA regulations, medical devices are sorted into three regulatory classifications: class one devices are subject to limited regulation, class two devices are subject to moderate regulation, and class three devices are highly regulated. The FDA must approve or clear a class three device before the manufacturer can market it. To obtain FDA approval, a manufacturer must submit a premarket approval application to the FDA. The FDA will approve a device if the premarket approval application provides the FDA with reasonable assurance that the device is safe and effective when used according to its labeling. To obtain FDA clearance, a manufacturer must submit to the FDA a premarket notification ninety days before introducing the device into interstate commerce. The FDA will clear a device if the premarket notification demonstrates that the device is substantially equivalent to a legally marketed device. A device is considered adulterated and misbranded if it is neither approved nor cleared by the FDA. Additionally, in order to modify an approved or cleared device, the manufacturer must submit a premarket notification to the FDA if the modification could significantly affect the safety or the effectiveness of the device. (*Id.* at 2-4.)

According to the indictment, Defendants are directors of AbTox, Inc.: Caputo was the President and Chief Executive Officer, Riley was Vice-President of Regulatory Affairs, Schmitt was Director of Marketing and Vice-President of Sales, and Lynch was Director of Clinical Services. AbTox was located in Mundelein, Illinois, and manufactured the Plazlyte sterilizer system. The Plazlyte system sterilized medical devices at low temperature in a gas plasma. The FDA cleared the Plazlyte sterilizer after finding that it was substantially equivalent to ethylene oxide sterilizers. The FDA cleared the sterilizer for use with stainless steel surgical instruments

that did not have hinges or lumens. The Government alleges that AbTox never marketed, sold, nor intended to market or sell the FDA-approved sterilizer. Instead, AbTox marketed and sold a modified sterilizer without submitting a premarket notification. The Government alleges that the modified sterilizer was adulterated, as the FDA did not approve a premarket approval application, and misbranded, as AbTox did not submit a premarket notification. (*Id.* at 4-6.)

Defendants, according to the indictment, agreed, combined, and conspired to defraud the United States by impeding the lawful function of the FDA to protect the health and safety of the public and by selling an adulterated and misbranded device to the Department of Veteran Affairs, the Department of Defense, the Bureau of Indian Affairs, and other U.S. government agencies. The conspiracy included the following overt acts committed in the Northern District of Illinois: flying out of O'Hare Airport in Chicago; approving the sale of five modified sterilizers; traveling to a Veteran Affairs hospital in St. Louis, Missouri; and meeting with an FDA investigator. (*Id.* at 7-16.)

Additionally, Defendants, according to the indictment, devised a scheme to defraud by selling the modified sterilizer and representing that it had been cleared by the FDA, (*id.* at 17-18); committed mail fraud by mailing a U.S. Treasury check, a price increase announcement, and an acceptance letter, (*id.* at 19-21); committed wire fraud by faxing a price quotation, a purchase order, and a service agreement, (*id.* at 22-24); and introduced an adulterated and misbranded medical device, the modified sterilizer, into interstate commerce, (*id.* at 28-34). Finally, the indictment alleges that Defendant Riley made false statements to an FDA investigator. (*Id.* at 25.)

On May 7, 2003, Defendants Caputo and Riley ("Defendants") filed the present motion to dismiss the indictment. (R. 24, Mot. to Dismiss.) Defendants raised four arguments in their motion: (1) counts one through nine and thirteen through nineteen violate the Due Process Clause because the FDA's regulatory scheme failed to give them fair notice of prohibited conduct; (2) the conspiracy count is duplicitous; (3) wire fraud counts eight and nine fail to allege use of the wires; and (4) false-statement count ten is based on fundamentally ambiguous questions. (R. 25, Defs.' Mem.) On July 29, 2003, the Government responded to Defendants' motion to dismiss and conceded that counts seven through nine should be dismissed. (R. 32, Gov.'s Resp. at 33.) Two weeks later, on August 12, 2003, the Government filed a superceding indictment with the following eighteen counts: conspiracy (count one); fraud (count two); mail fraud (counts three through five); wire fraud (counts six through eight); false statement (counts nine through eleven); and the introduction of an adulterated or misbranded device into interstate commerce (counts twelve through eighteen). (R. 35, Superceding Indictment.) The superceding indictment included updated wire fraud counts which properly allege use of the wires.

## LEGAL STANDARDS

The Federal Rules of Criminal Procedure permit a defendant to "raise by pretrial motion any defenses, objection, or request that the court can determine without a trial of the general issues." Fed. R. Crim. P. 12(b)(2). When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also United States v. Pitt-Des Moines, Inc.* 970 F. Supp. 1346, 1349 (N.D. Ill. 1997) (comparing a motion to dismiss an indictment to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss); *United*

States v. Andrews, 749 F. Supp. 1520, 1521 (N.D. Ill. 1990). A court can decide all questions of law raised in a motion to dismiss and can make necessary preliminary findings of fact as long as the court does not invade the province of the jury. The jury is the fact-finder, so any arguments raised in a motion to dismiss that rely on disputed facts should be denied. *United States v. Shriver*, 989 F.2d 898, 906 (7th Cir. 1992).

## ANALYSIS

### I. Vagueness

Defendants assert that counts one through six and thirteen through nineteen should be dismissed because the FDA regulatory scheme violates the Due Process Clause in that it is too ambiguous to afford proper notice of prohibited conduct. (R. 25, Defs.' Mem. at 15.) In particular they assert that 21 C.F.R. § 807.81 is unconstitutionally vague. (*Id.* at 16.) This regulation provides that the manufacturer of a medical device "must submit a premarket notification submission to the Food and Drug Administration" if the medical device is "about to be significantly changed or modified" and defines a significant change or modification as "[a] change or modification in the device that could significantly affect the safety or effectiveness of the device." 21 C.F.R. § 807.81 (2003).

The Seventh Circuit has clearly explained how to determine if a statute or regulation, which does not implicate First Amendment interests, is unconstitutionally vague:

> [w]hen . . . a statute or regulation does not implicate the First Amendment rights of a defendant, its vagueness is determined on an "as applied" basis. . . . Therefore, based on the specific facts of this case, if a reasonable person in [the defendant's] position would have been on notice that its conduct was at risk, and enforceable guidelines exist, the due process concerns are overcome.

5

*Pitt-Des Moines*, 168 F.3d at 986-87 (internal citations omitted). Because 21 C.F.R. § 801.81 does not implicate First Amendment interests, it can only be reviewed on an "as-applied" basis. "As-applied" review requires a court to review the specific facts in the case to determine if a reasonable person in Defendants' position would have been on notice that their conduct was at risk.[1] These types of factual determinations are not appropriately determined by a court in a pre-trial motion. Accordingly, Defendants' motion to dismiss on these grounds is denied as premature.

Defendants claim that their motion is not premature because the indictment establishes that the regulation is unconstitutionally vague. (R. 43, Defs.' Reply at 4.) Defendants assert that the mere fact that the indictment states that Defendants violated 21 C.F.R. § 807.81 is a sufficient factual predicate to enable this Court to find the regulation unconstitutionally vague. We disagree. The only case Defendants cite in support of this broad argument, *United States v. Sattar*, 272 F. Supp. 2d 348, 357 (S.D.N.Y. 2003), concerned a criminal statute *implicating* First Amendment interests. Statutes implicating First Amendment interests are not reviewed on an "as-applied" basis, so *Sattar* does not support Defendants' argument. Even if this Court were to "review the language of the regulatory standard, evaluate the FDA's published guidance documents, and take note of the Government's evolving interpretation of the regulations," as requested by Defendants, this Court would remain completely in the dark about whether Defendants had actual notice that their conduct was prohibited. (R. 43, Defs.' Reply at 5.)

---

[1] "Wherever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so, it is familiar to the criminal law to make him take the risk." *United States v. Wurzbach*, 280 U.S. 396, 399 (1930).

Actual notice would preclude a court from finding the regulation unconstitutionally vague. *See Pitt-Des Moines*, 168 F.3d at 987-88. Thus, it is inappropriate for this Court to determine, in the abstract, whether 21 C.F.R. § 807.81 is unconstitutionally vague.

## II. Duplicity

Defendants request that this Court dismiss the conspiracy count because it is duplicitous. (R. 25, Defs.' Mem. at 21.) A duplicitous count contains more than one offense in contravention of Federal Rule of Criminal Procedure 8(a)'s requirement of a separate count for each offense. *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996).

> The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both. Additionally, we have explained that a duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from less than a unanimous verdict as to each separate offense.

*United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001) (internal citations and quotations omitted). Defendants claim that the conspiracy count actually charges three distinct conspiracies: (1) a conspiracy to prevent the FDA from ensuring that their sterilizer was safe and effective; (2) a conspiracy to prevent the FDA from ensuring that their sterilizer was accurately labeled; and (3) a conspiracy to sell their sterilizer to government agencies. (R. 25, Defs.' Mem. at 21.)

As a threshold matter, this Court must decide if it can rule on duplicity in a pre-trial motion. The Government incorrectly relies on *United States v. Sophie*, 900 F.2d 1064, 1081 (7th Cir. 1990), to argue that duplicity is a question of fact reserved for the jury. *Sophie* addressed a post-trial variance argument, not a pre-trial motion to dismiss. The defendant in *Sophie* argued

7

that the evidence at trial varied from the evidence alleged in the indictment in that it proved multiple conspiracies rather than the single conspiracy contained in the indictment. The Seventh Circuit affirmed the defendant's conviction and stated that whether a single conspiracy actually existed is a jury question. *See also United States v. Williams*, 272 F.3d 845, 862 (7th Cir. 2001). This Court is not deciding whether a single conspiracy actually existed; we are deciding if the conspiracy count is duplicitous—if it combines more than one offense. *Marshall*, 75 F.3d at 1111. Duplicity is appropriately decided in a pre-trial motion. *See United States v. Magana*, 118 F.3d 1173, 1189 (7th Cir. 1997); *United States v. Simone*, 931 F.2d 1186, 1191-92 (7th Cir. 1991).

The Seventh Circuit stated in *Simone* that a count is not duplicitous if it states "the elements of a conspiracy offense, informed the defendants of the nature of the charge so that they could prepare a defense, and enabled them to plead the judgment as a bar to any later prosecution for the same offense." 931 F.2d at 1192 (also stating that the Seventh Circuit has treated multifaceted conspiracies as "single conspiracies rather than a series of smaller separate conspiracies"); *see also United States v. Bruun*, 809 F.2d 397, 405-06 (7th Cir. 1987); *United States v. Tocco*, 581 F. Supp. 379, 381 (D.C. Ill. 1984) (stating that a motion to dismiss should be denied if it is "possible that the government's evidence might establish a single conspiracy").

This Court finds that the conspiracy count is not duplicitous. The indictment includes all the elements of conspiracy.

> In order to convict a defendant of conspiracy, the Government must prove that (1) there was an agreement between two or more persons to commit an unlawful act, (2) the defendant was a party to the agreement, and (3) an overt act was committed in furtherance of the agreement by one of the co-conspirators.

*United States v. Hickok*, 77 F.3d 992, 1004-05 (7th Cir. 1996). The indictment alleges that

Defendants were parties to an agreement to defraud the United States as well as multiple overt

acts. This Court also finds that the indictment is sufficiently clear to inform Defendants of the

nature of the conspiracy and to enable them to plead the judgment as a bar to any later

prosecution for conspiracy to defraud the United States. Paragraphs four through fifteen of the

conspiracy count provide a detailed summary of all of Defendants' actions that are part of the

conspiracy. (R. 35, Superceding Indictment, Count One, ¶¶ 4-15.) Thus, this Court denies

Defendants' motion to dismiss the conspiracy count on these grounds.

### III. First Amendment

Defendants also argue that each of the three conspiracies, which are allegedly bundled

into the single conspiracy count, should be dismissed. As this Court has found that the

conspiracy count is not duplicitous, these arguments only need to be addressed if they apply with

equal force to the single conspiracy count alleged in the indictment. Defendants argue that: (1)

the conspiracy to prevent the FDA from ensuring that their sterilizer was safe and effective is

barred by the statute of limitations; (2) the conspiracy to prevent the FDA from ensuring that

their sterilizer was accurately labeled is based on conduct protected by the First Amendment; and

(3) the conspiracy to prevent the FDA from ensuring that their sterilizer was accurately labeled

and the conspiracy to sell their sterilizer to government agencies do not allege any overt acts. (R.

25, Defs.' Mem. at 20-30.)

Defendants' statute of limitations and overt act arguments lack merit. The indictment

alleges several overt acts, three of which were committed within the five-year statute of

limitations. *See* 18 U.S.C. § 3282; *United States v. Nowak*, 448 F.2d 134, 139 (7th Cir. 1971)

9

(stating that the conspiracy continues "[a]s long as any of the conspirators engaged in overt acts in furtherance of this scheme"). While none of the overt acts were within five years of the superceding indictment, the first indictment tolled the statute of limitations since the superceding indictment did not expand or broaden the original charges. *See United States v. Schimmel*, 950 F.2d 432, 436 (7th Cir. 1991).

Defendants' First Amendment argument, however, needs to be addressed in more detail. The FDCA and corresponding FDA regulations prohibit manufacturers from promoting uses for their products that have not been approved by the FDA. These non-FDA-approved uses are commonly referred to as off-label uses because they are not included in the product's labeling. Defendants argue that these FDA prohibitions violate the First Amendment. (R. 25, Defs.' Mem. at 25-30.) Defendants identify 21 C.F.R. § 801.4 as the apparent source of the FDA's authority to prohibit manufacturer promotion of off-label uses. (R. 47, Defs.' Resp. at 8.) Accordingly, they request that this Court dismiss the conspiracy count because it relies on constitutionally-protected speech that the FDA cannot lawfully prohibit.

Any person who seeks to introduce a medical device into interstate commerce must prove that it is safe and effective for its intended uses or that it is substantially equivalent to another medical device. 21 U.S.C. §§ 360(k), 360c(f), 360e(a) (2003); 21 C.F.R. §§ 807.92, 807.93 (2003). A device is cleared or approved on the basis of its intended use, and the FDA-approved use must be included in the product's labeling. 21 U.S.C. § 352(f); 21 C.F.R. § 801.5 (2003). The challenged regulation, 21 C.F.R. § 801.4, explains how the FDA determines a product's intended use.

> The words "intended uses" or words of similar import in §§ 801.5, 801.119, and 801.122 refer to the objective intent of the persons legally responsible for the labeling of devices. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised.

21 C.F.R. § 801.4 (2003). If the intended use of a product changes, manufacturers must obtain FDA approval for the new use so that they can label the product appropriately. 21 C.F.R. § 807.81(a)(3); 21 C.F.R. § 801.4. Including off-label uses in the product's labeling renders it adulterated and promoting off-label uses makes it misbranded. 21 U.S.C. §§ 351(f)(1)(B), 352(f) (2003). Manufacturing or introducing an adulterated or misbranded product into interstate commerce is prohibited. 21 U.S.C. § 331(a-c),(g) (2003). Thus, the FDCA and the corresponding FDA regulations prohibit manufacturer promotion of off-label uses.

The Supreme Court articulated a four-step test, the *Central Hudson* test, for determining whether commercial speech is protected by the First Amendment.

> Under that test [the court] ask[s] as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, [the court] next ask[s] "whether the asserted governmental interest is substantial." If it is, then [the court] "determine[s] whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

*Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 367 (2002) (*citing Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)).

Thus, this Court first must determine whether the "commercial speech concerns unlawful activity or is misleading." Whether manufacturer promotion of off-label uses concerned unlawful activity was addressed in great detail in *Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51 (D.D.C. 1998), *vacated by Washington Legal Found. v. Henney*, 202 F.3d 331 (D.C. Cir. 2000).[2] The issue in *Washington Legal Foundation* was whether FDA policies that restricted manufacturer promotion of off-label uses violated the First Amendment. The policies prevented manufacturers from distributing reprints of peer-reviewed journal articles and from sponsoring medical-education seminars. The FDA argued that the speech concerned unlawful activity because it was a prohibited act: misbranding. The court properly rejected this argument stating that the "proper inquiry is not whether the speech violates a law or regulation, but rather whether the conduct that the speech promotes violates the law." *Washington Legal Found.*, 13 F. Supp. 2d at 66. Promotion of off-label uses does not promote unlawful activity because off-label use of drugs and medical devices by physicians is not unlawful. *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 350 (2001) (*quoting* 21 U.S.C. § 396). This Court agrees with the court's reasoning in *Washington Legal Foundation* and finds that manufacturer promotion of off-label uses does not concern unlawful activity.

Whether manufacturer promotion of off-label uses is misleading is a much closer question.

---

[2] The United States Court of Appeals for the District of Colombia Circuit, in *Washington Legal Foundation v. Henney*, vacated *Washington Legal Foundation v. Friedman* because of the lack of a case or controversy. The court of appeals explicitly noted that its decision was purely procedural and that it was not criticizing the district court's reasoning. *Washington Legal Found.*, 202 F.3d at 337 n.7.

> The speech must be inherently misleading, which is defined in *Central Hudson* as more likely to deceive the public than to inform it. Whether speech is inherently misleading depends upon, *inter alia*, the possibilities for deception, whether experience has proven that in fact that such advertising is subject to abuse, and the ability of the intended audience to evaluate the claims made.

*Washington Legal Found.*, 13 F. Supp. 2d at 66-67 (internal citations and quotations omitted). Manufacturer promotion of off-label uses is potentially misleading because without the appropriate disclosures the other party may not be able to distinguish between off-label uses and FDA-approved uses. We presently do not know what sorts of disclaimers and disclosures Defendants provided when promoting off-label uses, but the indictment does not allege that they claimed the off-label uses were FDA-approved. However, Defendants' speech was directed at physicians who are familiar with the FDA-approval process and able to independently evaluate the validity of their claims. Given the sophistication of the audience to whom the off-label uses were promoted, this Court cannot conclude, at this stage of the proceedings, that Defendants' speech was inherently misleading.

The second step of the *Central Hudson* test is whether the government has a substantial interest in prohibiting manufacturer promotion of off-label uses. We find that the government has a substantial interest. In *Washington Legal Foundation*, 13 F. Supp. 2d at 71, the court held that subjecting off-label uses to the FDA's evaluation process constitutes a substantial government interest. In *Western States Medical Center*, 535 U.S. at 369, the Supreme Court found that "[p]reserving the effectiveness and integrity of the FDCA's new drug approval process is clearly an important governmental interest and the Government has every reason to want as many drugs as possible to be subject to that approval process." Permitting manufacturers to promote off-label uses would completely undermine the government's interest in subjecting off-

label uses to the FDA's evaluation process as well as the government's interest in preserving the integrity of the FDCA's new drug approval process. Manufacturers, knowing that they could promote off-label uses, would have an incentive only to seek FDA approval for uses that would be approved easily and inexpensively. Thus, this Court holds that subjecting off-label uses to the FDA's evaluation process is a substantial governmental interest.

The third step of the *Central Hudson* test is whether the regulation directly advances the substantial governmental interest. This Court adopts the reasoning of the court in *Washington Legal Foundation*.

> It is clear that manufacturers have incentives to circumvent subsequent approval requirements, but one wonders what incentives they have to obtain them? For a brand-new drug, the incentive is simple: the pharmaceutical company cannot manufacture or introduce the drug into interstate commerce without FDA approval. *See* 21 U.S.C. § 355(a). However, the drugs subject to off-label prescriptions are *already* in interstate commerce, so the obvious restriction on conduct is unavailable. Therefore, one of the few mechanisms available to the FDA to compel manufacturer behavior is to constrain their marketing options; i.e. control the labeling, advertising, and marketing.

13 F. Supp. 2d at 72 (emphasis in original). Thus, this Court finds that FDA prohibitions on commercial speech directly advance the government's interest in subjecting off-label uses to the FDA's evaluation process.

The final step of the *Central Hudson* test is whether the FDA prohibition is more extensive than necessary to advance the substantial governmental interest. The court in *Washington Legal Foundation* found that FDA policies preventing manufacturers from distributing peer-reviewed journal articles and from sponsoring medical education seminars were more extensive than necessary. The court noted that "permitting this limited form of manufacturer communication still leaves more than adequate incentives compelling drug

14

manufacturers to get new uses approved by the FDA" and explained that "were manufacturers permitted to engage in *all* forms of marketing of off-label treatments, a different result might be compelled." *Id.* (emphasis in original).

This Court finds that, unlike *Washington Legal Foundation*, Defendants' First Amendment challenge strikes at the very heart of the FDA's ability to proscribe manufacturer promotion of off-label uses. Defendants state in their reply brief that accepting their argument would deprive the FDA of the ability "to regulate truthful, non-misleading speech between manufacturers and their customers." (R. 43, Defs.' Reply at 18.) This Court believes that permitting Defendants to engage in *all* forms of truthful, non-misleading promotion of off-label use would severely frustrate the FDA's ability to evaluate the effectiveness of off-label uses. More importantly, we are unable to identify a less burdensome alternative that would advance the government's substantial interest. Thus, the FDA prohibitions are not more extensive than necessary.

In sum, this Court finds, after applying the *Central Hudson* test, that 21 C.F.R. § 801.4 does not offend the First Amendment. Thus, Defendants' motion to dismiss the conspiracy count on this ground is denied.

**IV. Fundamental Ambiguity**

Finally, Defendants request that this Court dismiss the false-statement count brought against Riley. (R. 25, Defs.' Mem. at 35.) The indictment states that Riley violated 18 U.S.C. § 1001 when he:

> knowingly and willfully falsified and concealed a material fact, and made a materially false, fictitious, and fraudulent statement and representation, in that he denied to an investigator for the FDA that any AbTox employee to his knowledge had promoted

15

the Plazlyte sterilizer for sterilization of devices other than those labeled in the operator's manual, or that to his knowledge any AbTox employee had distributed promotional literature stating that the Plazlyte system had been built to replace ethylene oxide, or had made oral statements to that effect.

(R. 35, Superceding Indictment at 25.) Defendants assert that this false-statement count should be dismissed because the wording of the underlying questions and the context in which they were asked renders them fundamentally ambiguous. (R. 23, Defs.' Mem. at 35.)

A question is fundamentally ambiguous if it is not capable of being reasonably understood. *United States v. Yasak*, 884 F.2d 996, 1002-03 (7th Cir. 1989). The jury, as fact-finder, decides whether a question is ambiguous, but a judge can remove this question from the jury if it is so ambiguous—fundamentally ambiguous—that it would be unjust and unnecessary to require the defendant to prove this ambiguity at trial. *Id.* at 1003. Since the jury is the judicial fact-finder, this Court will not find a fundamental ambiguity unless it is absolutely convinced that the question is incapable of reasonable comprehension.

Defendants identify two fundamentally ambiguous questions:

Do you have any knowledge of any employee, specifically clinical specialists and sales personnel, promoting the Plazlyte Sterilization System for sterilization of devices other than those labeled in the operators [sic] manual (stainless steel non-lumened, non-hinged wrapped in Mylar/Tyvek pouches)?

Have you or other AbTox employees, to the best of your knowledge, ever made the claim that the Plazlyte System was built to replace EtO sterilization?

(R. 25, Defs.' Mem. at 36; R. 26, Defs.' Ex. 25.) Defendants assert that the first question is fundamentally ambiguous for two reasons: (1) it does not explicitly state the relevant time period; and (2) it states that specific devices were included in the operator's manual, when in practice the operator's manual does not identify specific devices, but only describes their specifications. (R.

25, Defs.' Mem. at 37-38.) Defendants assert that the second question is fundamentally ambiguous for three reasons: (1) the term "claim" is undefined; (2) the question does not specify which potential recipients of a "claim" are included in the scope of the question; and (3) the question lacks a time period. (*Id.* at 38.)

This Court finds that both questions are capable of being reasonably understood and, thus, are not fundamentally ambiguous. The time period of the first question can be reasonably understood as the broadest possible since it refers to current knowledge. The discrepancy between the actual and stated contents of the operator's manual in the first question can be reasonably understood given the parties' intimate knowledge of their product and its labeling. The second question can be reasonably understood because the term "claim" has a common everyday usage; the failure to specify the potential recipients of the claim does not make the question incomprehensible; and the sentence specifies a time period by using the word "ever."

Defendants also ask this Court to rule that the context in which the questions were asked makes them fundamentally ambiguous. "The context of the question and answer is often of critical importance if it is claimed the question was ambiguous or was misunderstood." *United States v. Martellano*, 675 F.2d 940, 943 (7th Cir. 1982). Once again, contextual ambiguity is a jury question that this Court will only decide if it is absolutely convinced that the context in which the questions were asked rendered them incapable of reasonable comprehension. The challenged questions were asked during a formal interview as part of an FDA investigation. (R. 26, Defs.' Ex. 25.) Thus, this Court finds that the context in which the questions were asked did not make them fundamentally ambiguous. Accordingly, this Court denies Defendants' motion to dismiss the false-statement count.

17

## CONCLUSION

For the reasons provided above, Defendants' motion to dismiss the indictment is denied in its entirety. (R. 24-1, Defs.' Mot. to Dismiss.)

ENTERED: _____

Judge Ruben Castillo
United States District Court

**Dated: October 21, 2003**