# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 126 - 1 and 2 | **DATE** | 3/11/2004 |
| **CASE TITLE** | USA vs. Ross A. Caputo and Robert M. Riley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Government's motion in limine [75-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAR 11 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 89 |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03 CR 0126 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| ROSS A. CAPUTO and | ) | |
| ROBERT M. RILEY. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This is the third opinion we have issued in this pending criminal case. In our earlier opinions we denied pretrial efforts to dismiss the indictment and to obtain a bill of particulars. *See United States v. Caputo*, 288 F. Supp. 2d 923 (N.D. Ill. 2003) (addressing the bill of particulars); *United States v. Caputo*, 288 F. Supp 2d 912 (N.D. Ill. 2003) (addressing the motion to dismiss). The facts surrounding these charges are adequately summarized in our earlier opinion addressing the motion to dismiss and will not be needlessly repeated herein.

This opinion addresses the Government's motion *in limine* presently before the Court. (R. 75-1.) The Government seeks to prohibit Defendants Ross Caputo and Robert Riley ("Defendants") from arguing that they did not need to file a premarket notification, known as a 510(k) submission, with the Food and Drug Administration ("FDA") in order to market a modified version of a FDA-cleared sterilizer.[1] The Government further seeks to prohibit Defendants from arguing that the marketed sterilizer was safe and effective or that they had a reasonable belief that it was safe and effective. For the reasons provided below, we grant the

---

[1] The Government asserts that the marketed sterilizer is a different, rather than a modified, sterilizer. Whether the marketed sterilizer is a modified or different sterilizer is a fact question that the Court cannot resolve. We use the term modified sterilizer only for convenience and consistency.

Government's motion in *limine*. (R. 75-1.) We definitively rule that Defendants cannot argue that they did not need to file a premarket notification because the modified sterilizer was as safe and effective as the FDA-cleared sterilizer. We also rule that they cannot argue that they had a good faith belief that the modified sterilizer was as safe and effective as the FDA-cleared sterilizer.

## RELEVANT FACTS

Defendants were directors of Abtox, Inc.: Caputo was President and Chief Executive Officer and Riley was Vice-President of Regulatory Affairs. Abtox manufactured a medical device, the Plazlyte Sterilization System, that sterilized medical devices at low temperatures in a gas plasma. Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-97, a medical device manufacturer must obtain premarket approval or premarket clearance from the FDA before marketing a medical device. A manufacturer must file a 510(k) submission with the FDA to obtain premarket clearance, and the FDA will grant premarket clearance if it determines that the device is substantially equivalent to a device that is currently on the market. Finally, a manufacturer needs to file an additional 510(k) submission in order to market a modified version of a medical device that is or has been in commercial distribution if the modifications "could significantly affect the safety or effectiveness of the device." 21 C.F.R. § 807.81(a)(3).[2]

The FDA granted Abtox premarket clearance to market the Plazlyte sterilizer after determining that it was substantially equivalent to ethylene oxide sterilizers that were already on

---

[2] Under the FDCA, "the burden is on the manufacturer to determine whether a premarket notification should be submitted for a change or modification in a device . . . [because] the manufacturer is the person best qualified to make this determination." Establishment Registration and Premarket Notification, 42 Fed. Reg. 42520, 164-65 (August 23, 1977).

the market. (R. 84, Gov't's Reply, Ex. 1, FDA Letter.) After marketing the modified sterilizer, Abtox filed at least four 510(k) submissions seeking premarket clearance to market that sterilizer. (R. 80, Defs.' Opp'n at 10; R. 84, Gov't Reply, Exs. 3-6.) In these 510(k) submissions, Abtox described the modifications to the FDA-cleared sterilizer as minor. (R. 80, Defs.' Opp'n, Ex. 7, FDA Letter at 1.) The FDA found each submission deficient and informed Abtox that it "considers the design modifications significant requiring a new 510(k) submission" and that it could not market the modified sterilizer without FDA approval. (*Id.* at 1, 24.) Defendants continued to market the modified sterilizer, but allege that they did so pursuant to a FDA policy that permits manufacturers to market modified devices pending the resolution of any modification issues. (*Id.*, Ex. 4, Seizure Approval Letter at 3.)

## LEGAL STANDARDS

The Court's power to exclude evidence *in limine* derives from the Court's authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). A motion *in limine* should only be granted where the evidence is clearly inadmissible for any purpose. *Basile v. Ondrato*, No. 02-C-3795, 2003 WL 22953340, at *1 (N.D. Ill. Dec. 12, 2003). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). If the Court grants a motion in *limine* we should specify whether the ruling is conditional or definitive, *Wilson v. Williams*, 182 F.3d 562, 567 (7th Cir. 1999), but the Court may nonetheless, in the exercise of sound judicial discretion, amend an *in limine* ruling if warranted, *Luce*, 49 U.S. at 41-42.

**ANALYSIS**

The Government seeks to prohibit Defendants from arguing that Abtox did not need to file a 510(k) submission in order to market the modified sterilizer. The Government further seeks to prohibit them from arguing that the marketed sterilizer was safe and effective or that they had a reasonable belief that it was safe and effective. While the Government did not differentiate its various arguments, we derived three distinct arguments from the Government's memorandum: (1) this evidence is precluded by the FDA's determination that Defendants needed to file a new 510(k) submission; (2) this evidence is not relevant; and (3) even if this evidence were relevant, its probative value is substantially outweighed by the danger of confusing the issues. We address each argument in turn.

**I. Issue Preclusion**

It is undisputed that the FDA concluded that Abtox needed to file a new 510(k) submission in order to legally market the modified sterilizer. (R. 80, Defs.' Opp'n, Ex. 7, FDA Letter at 1, 24.) The Government asserts that issue preclusion relieves it of the burden of proving at trial that a new 510(k) submission was required. Evidence or arguments that contradict a factual determination made by an agency are precluded if: (1) the original action was properly before the agency; (2) the same disputed issue of fact was before the agency as is before the court; (3) the agency acted in a judicial capacity; and (4) the parties had an adequate opportunity to litigate the issues before the agency. *Meyer v. Rigdon*, 36 F.3d 1375, 1379-80 (7th Cir. 1994). Under this test, any arguments or evidence that Abtox did not need to file a new 510(k) submission are not precluded by the FDA's determination. The FDA did not act in a judicial capacity when it determined that a new 510(k) submission was required. The FDA simply

reviewed Abtox' 510(k) submissions and concluded that Abtox needed to file a new 510(k) submission. Defendants, therefore, are not precluded from arguing that Abtox did not need to file a new 510(k) submission in order to legally market the modified sterilizer.[3]

**II. Federal Rule of Evidence 402: Relevance**

The Government next argues that the safety and effectiveness of the marketed sterilizer are not relevant because, among other reasons, the FDA-cleared sterilizer was never in commercial distribution. Under 21 C.F.R. § 807.81, whether the FDA-cleared sterilizer was in commercial distribution determines when a manufacturer is required to file a 510(k) submission.[4]

---

[3] The parties argue extensively about whether Defendants could have legally challenged the FDA's determination. These arguments, however, concern the administrative doctrines of exhaustion, finality, and ripeness and are not relevant to whether a criminal defendant is precluded from making arguments that contradict an administrative finding.

[4] The relevant text of 21 C.F.R. § 807.81 is provided due to the importance of this regulation to the resolution of this issue.

§ 807.81 When a premarket notification submission is required.

> (a) Except as provided in paragraph (b) of this section, each person who is required to register his establishment pursuant to § 807.20 must submit a premarket notification submission to the Food and Drug Administration at least 90 days before he proposes to begin the introduction or delivery for introduction into interstate commerce for commercial distribution of a device intended for human use which meets any of the following criteria:
> (1) The device is being introduced into commercial distribution for the first time; that is, the device is not of the same type as, or is not substantially equivalent to, (i) a device in commercial distribution before May 28, 1976, or (ii) a device introduced for commercial distribution after May 28, 1976, that has subsequently been reclassified into class I or II.
> (2) The device is being introduced into commercial distribution for the first time by a person required to register, whether or not the device meets the criteria in paragraph (a)(1) of this section.
> (3) The device is one that the person currently has in commercial distribution or is reintroducing into commercial distribution, but that

Subsections 807.81(a)(1) and 807.81(a)(2) together explain when a 510(k) submission is required for a device that is "being introduced into commercial distribution for the first time," and subsection 807.81(a)(3) explains when a 510(k) submission is required when a "device is one that the person currently has in commercial distribution or is reintroducing into commercial distribution, but that is about to be significantly changed or modified in design, components, method of manufacture, or intended use." 21 C.F.R. § 807.81(a).

It appears undisputed that the FDA-cleared sterilizer was never in commercial distribution. This issue was previously addressed by the parties in their memoranda associated with Defendants' motion to dismiss. While Defendants did not explicitly state that the FDA-cleared sterilizer was never in commercial distribution, they argued that it would be "grossly unjust" to prosecute them because they, as well as the FDA, have consistently assumed that subsection 807.81(a)(3) should apply. (R. 43, Defs.' Reply at 8.) The Government acknowledged that the FDA "acted under the assumption that [21 C.F.R. § 807.81(a)(3)] did apply to Abtox." (R. 33, Gov't's Resp. at 9 n.2.) Because Defendants addressed the Government's argument but did not deny its assertion that the FDA-cleared sterilizer was never

---

is about to be significantly changed or modified in design, components, method of manufacture, or intended use. The following constitute significant changes or modifications that require a premarket notification:
    (i) A change or modification in the device that could significantly affect the safety or effectiveness of the device, e.g., a significant change or modification in design, material, chemical composition, energy source, or manufacturing process.

21 C.F.R. § 807.81.

in commercial distribution, we conclude that the FDA-cleared sterilizer was never in commercial distribution.

Subsection 807.81(a)(3) only applies when a device is in commercial distribution or has been in commercial distribution. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Subsection 807.81(a)(3) is, therefore, not relevant because the FDA-cleared sterilizer was never in commercial distribution.

Defendants assert that this subsection is relevant, nonetheless, because they had a good faith belief that subsection 807.81(a)(3) permitted them to market the modified sterilizer without filing a new 510(k) submission. Defendants claim that their good faith belief negates an essential element of the fraud counts: intent to defraud.[5] *See United States v. Morris*, 80 F.3d 1151, 1165 (7th Cir. 1996). If the FDA-cleared sterilizer had been in commercial distribution, Defendants' good faith belief that subsection 807.81(a)(3) permitted them to market the modified sterilizer would be a defense to the fraud counts because Defendants are "entitled to have their intent assessed in light of the interpretation of the underlying filing requirements that is most congenial to their case theory and yet also objectively reasonable." *See United States v. Prigmore*, 243 F.3d

---

[5] "Intent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Owens*, 301 F.3d 521, 528 (7th Cir. 2002). But when a defendant is charged with conspiracy to defraud under 18 U.S.C. § 371, intent to defraud includes both intending to cause the government property or pecuniary loss and intending to interfere with or obstruct a lawful government function. *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1519 (7th Cir.1993).

7

1, 17 (1st Cir. 2001). Subsection 807.81(a)(3), however, is not applicable, so Defendants' subjective belief that this subsection permitted them to market the modified sterilizer is not relevant and does not constitute a valid good faith defense to the pending charges.

Defendants cannot argue that they had a valid good faith belief that subsection 807.81(a)(3) was applicable. First, it is not objectively reasonable for Defendants to interpret subsection 807.81(a)(3) as permitting them to market the modified sterilizer when the FDA-cleared sterilizer was never in commercial distribution. *See United States v. Thurston*, 358 F.3d 51 (1st Cir. 2004) (explaining that the *Prigmore* rule does not apply when there is "no material question about ambiguity in the underlying legal requirements[,] no germane question about the meaning of the law . . . [and] no issue of lack of fair notice of what the law requires . . ."). Subsection 807.81(a)(3) unambiguously states that it only applies when a device is or has been in commercial distribution. 21 C.F.R. § 807.81(a)(3). Such a defense would be the classic mistake of law defense that has been uniformly rejected except in very narrow circumstances, such as tax evasion. *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."); *United States v. Stockheimer*, 157 F.3d 1082, 1088 (7th Cir. 1998) (stating that "a defendant's belief in the legality of his conduct is not a defense" to mail and bank fraud). Nor can Defendants assert that their mistaken understanding was caused by the FDA or any other government official, *see, e.g., Ostrosky v. Alaska*, 913 F.2d 590, 595 (9th Cir. 1990), because they acknowledge that Abtox started marketing the modified sterilizer "based on its understanding . . . that no new 510(k) was required" prior to filing a 510(k) submission with the FDA. (R. 80, Defs.' Opp'n at 10.)

8

## III. Federal Rule of Evidence 403: Confusion of the Issues

Finally, we address the Government's remaining argument that this evidence should be excluded because its probative value is substantially outweighed by the danger of confusing the issues before the jury. The Court expressly concludes in the exercise of its discretion under Federal Rule of Evidence 403, for all the reasons contained herein, that any probative value of the Defendants' invalid good faith defense is substantially outweighed by the danger of confusing the issues before the jury and unduly delaying the trial.

## CONCLUSION

For the reasons provided above, we grant the Government's motion *in limine*. (R. 75-1.) We conclude that 21 C.F.R. § 807.81(a)(3) is not relevant because the FDA-cleared sterilizer was never in commercial distribution. Accordingly, we definitively rule that Defendants cannot argue that they did not need to file a premarket notification because the modified sterilizer was as safe and effective as the FDA-cleared sterilizer. We also rule that they cannot argue that they had a good faith belief that the modified sterilizer was as safe and effective as the FDA-cleared sterilizer. This is a definitive ruling of law by the Court that will govern the trial as well as the Court's potential jury instructions. The Court's ruling will only be revisited if Defendants can establish that the FDA-cleared sterilizer was in commercial distribution.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: March 11, 2004