# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 03 CR 0126 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| ROSS A. CAPUTO and | ) | |
| ROBERT M. RILEY. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses three criminal discovery motions: (1) Defendants Ross Caputo and Robert Riley's motion to compel discovery under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963); (2) Defendants' motion for a rule to show cause why four government hospitals have not complied with subpoenas issued pursuant to Federal Rule of Criminal Procedure 17; and (3) the prosecution's motion to quash those same subpoenas. The relevant facts associated with these motions are explained in this Court's earlier opinions. *See United States v. Caputo*, 288 F. Supp. 2d 912 (N.D. Ill. 2003), and *United States v. Caputo*, 313 F. Supp. 2d 764 (N.D. Ill. 2004). For the reasons provided below, we partially grant and partially deny Defendants' motion to compel discovery, (R. 151-1), deny Defendants' motion for a rule to show cause, (R. 150-1), and partially grant and partially deny the prosecution's motion to quash the four subpoenas, (R. 154-1).

## LEGAL STANDARDS

I. *Brady v. Maryland*

*Brady* requires the prosecution to disclose "evidence favorable to an accused." 373 U.S. at 87. "Evidence favorable to an accused" is exculpatory and impeachment evidence that is material to either the issue of guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The prosecution must disclose, even in the absence of a request from the defendant, all such evidence known by all individuals acting on its behalf in the case at hand. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

## II. Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires the prosecution to permit a defendant to inspect documents and objects that are "within the government's possession, custody, or control" and "material to preparing the defense." Documents are within the government's possession, custody, or control if the prosecution has knowledge of and access to them. *See United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). Documents are "material to preparing the defense" if they could "significantly help[] in 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal.'" *United States v. Gaddis*, 877 F.2d 605, 611 (7th Cir. 1989) (quoting *United States v. Felt*, 491 F. Supp. 179, 186 (D. D.C. 1979)); *see also United States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998) (holding that even damaging inculpatory evidence can be material if it enables the defendant to alter significantly the quantum of proof in his favor by enabling him to prepare a strategy to confront the damaging evidence, conduct an investigation to discredit the damaging evidence, or present a defense that would not be undercut by the damaging evidence).

A defendant, however, is only entitled to the production of these documents if he makes at least a *prima facie* showing of materiality. *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir. 1991). To make a *prima facie* showing, a defendant cannot rely on general descriptions

2

or conclusory arguments, but must convincingly explain how specific documents will significantly help him uncover admissible evidence, prepare witnesses, or corroborate, impeach, or rebut testimony.[1] The court should also consider the materials that have already been produced, the availability of the requested materials from other sources, and the defendant's own knowledge. *Ross*, 511 F.2d at 763.

### III. Federal Rule of Criminal Procedure 17

Federal Rule of Criminal Procedure 17(c) permits the use of subpoenas to "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" and permits the court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." A defendant is entitled to subpoena documents if he shows:

> (1) that the documents are evidentiary and relevent [*sic*]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). It is the duty of this Court to ensure that a "subpoena is good in its entirety and it is not upon the person who faces punishment to cull the good from the bad." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951).

---

[1] *See United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) (stating that a defendant must explain how the requested materials will be helpful to his defense); *United States v. Phillip*, 948 F.2d 241, 250-51 (6th Cir. 1991) (stating that a defendant must convincingly explain how requested materials would assist him); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (requiring a defendant to submit facts showing that the requested documents will significantly help him prepare his defense); *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975) (stating that a defendant must show that the requested documents have more than an "abstract logical relationship" to the issues in the case by indicating that the requested materials will enable him to alter significantly the quantum of proof in his case).

## ANALYSIS

### I. *Brady v. Maryland*

The parties dispute the applicability of *Brady* to the issues presented in this motion to compel discovery. The prosecution correctly asserts that *Brady* is only a rule of disclosure. *See United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996) ("Brady thus is a disclosure rule, not a discovery rule."). Defendants, nonetheless, assert that the prosecution is obliged to "produce" two broad categories of discovery: (1) all documents related to an alleged FDA policy or practice of permitting manufacturers to continue to market medical devices pending the resolution of modification issues and (2) all documents related to any government hospital's evaluation or purchase of a Sterrad sterilizer that refer to or relate to the Plazlyte sterilizer or AbTox. (R. 151, Defs.' Mot. to Compel Discovery.) We disagree.

The prosecution is only obliged by *Brady* to disclose all favorable evidence known by all individuals acting on its behalf in the case at hand. *Kyles*, 514 U.S. at 437. The documents that Defendants are requesting are not in the possession of anyone acting on behalf of the prosecution; they are in the possession of the FDA or government hospitals.[2] (R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery at 4-7.) Furthermore, it is unknown whether any of the requested documents contain exculpatory or impeachment evidence that is material to either the issue of guilt or punishment. For both of these reasons, *Brady* is not applicable to this motion to compel discovery.

---

[2] With respect to the documents in the possession of the FDA, the prosecution has assured this Court that its "inquiries to the FDA have disclosed no such documents or written policy." (R. 170, Gov't's Obj. at 4.)

4

## II. Federal Rule of Criminal Procedure 16

Defendants request the production of two broad categories of discovery: (1) all documents related to an alleged FDA policy or practice of permitting manufacturers to continue to market medical devices pending the resolution of modification issues and (2) all documents related to any government hospital's evaluation or purchase of a Sterrad sterilizer that refer to or relate to the Plazlyte sterilizer or AbTox. (R. 151, Defs.' Mot. to Compel Discovery.) For the reasons provided below, we find that Defendants have not made a *prima facie* showing that the requested documents are material to preparing the defense. Accordingly, the prosecution does not have to locate the requested documents for Defendants' inspection.

### A. Policy of Permitting Marketing Pending Resolution of Modification Issues

The first category actually contains three sub-categories: (1) all documents related to an alleged FDA policy of permitting manufacturers to continue to market medical devices pending the resolution of modification issues; (2) all documents related to an alleged FDA practice of permitting manufacturers to continue to market medical devices pending the resolution of modification issues; and (3) all documents related to a 1994 internal FDA memorandum concerning the FDA's enforcement discretion with respect to modified devices. There is no need to address the first category because the prosecution has asserted that its inquiries to the FDA have produced no documents relating to the alleged FDA policy. (R. 170, Gov't's Obj. to Defs.' Mot. to Compel Discovery at 4.)

#### 1. Documents Related to an Alleged FDA Practice

On December 1, 2004, Defendants sent the prosecution a supplemental letter stating that an earlier discovery request sought all documents related to twenty-seven FDA warning letters

5

issued to various companies in 1994 or 1995.[3] (R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery, Ex. B, Dec. 1, 2004 Letter.) Defendants assert that these documents are material to preparing the defense because they could establish that the FDA had a practice of allowing manufacturers to market medical devices that have modification issues. (*Id.* at 5-6.) The prosecution asserted that it would not produce the documents relating to the warning letters because they are not material to preparing the defense. (*Id.*, Ex. D, Dec. 10, 2004 Letter at 1-2.) Thus, we must determine whether the documents related to the warning letters are material to preparing the defense.

Defendants assert that these documents are material to preparing their defense because they might contain evidence that the FDA permitted other firms to continue marketing modified medical devices after receiving an FDA warning letter. (*Id.* at 5-6.) Defendants expect that the prosecution will introduce into evidence several FDA warning letters sent to AbTox that stated: "You may not market this device until you have received a letter from FDA allowing you to do so. If you market the device without conforming to this requirement you will be in violation of the Federal Food, Drug, and Cosmetic Act." (R. 84, Gov't's Reply in Support of Mot. in Limine, Exs. 4-6, FDA Deficiency Letters.) Defendants assert that, despite the issuance of these warning letters, they acted in good faith because they "reasonably relied on statements of FDA officials in making the decisions to continue marketing." (R. 95, Defs.' Mem. in Support of Reconsideration

---

[3] The earlier discovery request was sent in a July 22, 2004 letter that contained eight broad discovery requests. (R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery, Ex. A, July 22, 2004 Letter.) The supplemented discovery request was one of eighteen sub-parts to one of these broad discovery requests. (*Id.*) It requested "[a]ny memoranda, policies or practices, formal or informal, written or oral, that allow marketing when a device has modification issues, or when the FDA has questions or concerns that a modified device may require the submission of a new 510(k)." (*Id.* at 3.)

at 8 n.6; *see also* R. 80, Defs.' Opp'n to Gov't's Mot. in Limine at 12.) Defendants assert that the requested documents might contain evidence that would corroborate the statements on which they allegedly relied. (R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery at 6.)

Defendants' argument demonstrates some "abstract, logical relationship" between the requested documents and Defendants' good faith defense. *See Ross*, 511 F.2d at 762. They have failed, however, to make a *prima facie* showing of materiality. *See Thompson*, 949 F.2d at 1341. Even if we assume that the requested documents will contain corroborative evidence, this evidence would have an extremely low probative value because the documents do not directly address anything that happened with respect to the medical device involved in this case. They seek these documents to establish an alleged general FDA practice of permitting marketing pending the resolution of modification issues. Furthermore, it is unlikely that a full evidentiary record with respect to any specific warning letter could be recovered because an entire decade has passed since these warning letters were issued. Even if all the documents related to any specific warning letter were found, the introduction of these documents into evidence would require additional testimony from knowledgeable FDA officials or other manufacturers explaining the documents' contents and context as they relate to other medical devices. Thus, the limited probative value of this evidence (assuming it exists) would be substantially outweighed by the danger of confusing the issues, misleading the jury, and causing undue delay. *See* Fed. R. Evid. 403.

We must also consider the likelihood that the requested documents will contain any corroborative evidence. Defendants intend to rely on "statements of FDA officials" to prove that the FDA permitted them to continue marketing their sterilizer after it issued them a warning letter. (R. 95, Defs.' Mem. in Support of Reconsideration at 8 n.6.) As far as this Court is aware,

7

these statements are not in any FDA records. The absence of any evidence of this alleged policy or practice in Defendants' files strongly suggests that files relating to warning letters that other manufacturers received will also be devoid of corroborative evidence. The absence of such evidence is not surprising because, as the prosecution pointed out in its December 10, 2004 letter, "[t]he Federal Food, Drug, and Cosmetic Act prohibits the marketing of an adulterated device." (R. 153, Defs.' Mem., Ex. D, Dec. 10, 2004 Letter at 1.) Defendants' failure to support their motion with any FDA records that corroborate the alleged practice at this late stage in the litigation renders their request far too speculative.[4]

Defendants have identified a needle that *might* exist inside the haystack that is the FDA. Rule 16, however, does not require the prosecution to find it because its existence is speculative, its relevance is minimal, and its admissibility is seriously questionable. For these reasons, Defendants have not made a *prima facie* showing that the requested documents are material to preparing the defense. Thus, the prosecution does not have to locate the requested documents for Defendants' inspection.[5]

---

[4] The only document that this Court is aware of that addresses this issue is a 1998 FDA memorandum authorizing the seizure of the Plazlyte sterilizer. (R. 80, Defs.' Opp'n to Gov't's Mot. in Limine, Ex. 4, March 25, 1998 FDA Mem. at 3.) Defendants, however, have not cited this memorandum in support of this motion.

[5] We reached this conclusion without even considering the late date at which Defendants made this broad request, the delay that this discovery would create, and the immense burden it would impose on the prosecution. The prosecution explained the burden that compliance would impose in its brief objecting to the motion to compel discovery.

> Records relating to a warning letter may be stored in many places. Since issuance of a warning letter will usually involve a prior inspection, there may well be records at some or even all of the FDA's regional offices. Records of the FDA's headquarters at Rockville may have been generated in any of several divisions, including Compliance, the Office of Device Evaluation, the Office of Chief Counsel, as well as potentially others, depending on the subject of the warning letter. Since the

## 2. Documents Related to a 1994 Internal FDA Memorandum

We must now consider whether the prosecution must permit Defendants to inspect all documents related to a 1994 internal FDA memorandum. This 1994 internal FDA memorandum instructed the FDA's Office of Compliance staff to "exercise discretion when initiating enforcement actions" regarding changes to previously cleared devices because a new draft guidance document had been issued that "reflects a more conservative approach resulting in some of these same modifications now requiring a new 510(k)." (R. 180, Defs.' Reply to Mot. to Compel Discovery, Ex. A, FDA Internal Mem.) The internal memorandum explained:

> If we encounter a change that has been made in a cleared device that ODE has determined warrants a new 510(k), we must determine from ODE whether the change would have warranted a 510(k) under policies that existed 3 or 4 years ago. If it is determined that a 510(k) probably would not have been required previously, but does now, we have a situation in which we must exercise discretion. We will advise the firm via a Warning Letter that the modification requires submission of a 510(k). However, no further enforcement action should be pursued provided the firm promptly files a 510(k) and pursues its clearance and the firm has the following:
>
> - documentation that it has in place procedures for determining when a modification requires the submission of a 510(k); and
> - documentation that the modification in question was subjected to these procedures and it was determined that a 510(k) was not needed.

---

records sought are ten to eleven years old, it is likely that, if they still exist, they will be in storage, probably remote storage. Compliance with the request could easily run to many thousands of pages, stored in multiple locations.

Once located and assembled, these thousands of pages would have to be read and redacted. In all likelihood "all documents and information" relating to these *twenty-seven* warning letters contain many proprietary trade secrets, as well as other commercially sensitive information. Presumably notice of some kind would have to be given to the twenty-seven companies involved, or their successors in interest, so that they could be heard with regard to what should be redacted.

(R. 170, Gov't's Obj. to Defs.' Mot. to Compel Discovery at 7.)

(*Id.*) Finally, the internal memorandum states that the "above policies do not apply to situations in which the change to the device has created a health hazard, resulted in a defective device, or is one that would have clearly required a new 510(k) under our old as well as our new policies." (*Id.*)

This internal FDA memorandum is not material to preparing the defense because it is not relevant. First, the internal FDA memorandum only permits the FDA to exercise enforcement discretion when "a 510(k) probably would not have been required previously." The March 1993 Guidance on 510(k) Submissions provided that "[a]ny change in sterilization vessel dimensions" "require[s] submission of a new 510(k) for a sterilizer . . . ." (R. 96, App. to Defs.' Mem. in Support of Reconsideration, Ex. A2, 1993 Guidance Document at 12.) Defendants changed the sterilization vessel dimensions when they modified their sterilizer, (*see* R. 25, Defs.' Mem. in Support of Mot. to Dismiss at 7), so the 1993 Guidance Document required a new 510(k). Second, even if this internal FDA memorandum permitted the FDA to exercise enforcement discretion with respect to Defendants, it still would have required them to "promptly file[] a 510(k) and pursue[] its clearance." Defendants have steadfastly maintained that they did not need to file a new 510(k). (*See* R. 80, Defs.' Opp'n to Gov't's Mot. in Limine at 10-11.) Third, Defendants were not aware of this internal FDA memorandum so cannot argue that it explains how they acted in good faith. Finally, this internal FDA memorandum did not alter the applicable FDA regulations, so Defendants cannot argue that it permitted them to disregard or deviate from the applicable FDA regulations.[6] For these four reasons, this 1994 internal FDA

---

[6] *See United States v. Glover*, No. 92-50388, 1993 WL 321695, at *1 (9th Cir. 1993) (stating that internal guidelines establishing enforcement discretion are not discoverable because they did not alter the statutory requirements); *United States v. Marbelt*, 129 F. Supp. 2d 49, 56 (D. Mass. 2000) (stating that an agency's internal guidelines are not relevant because non-

memorandum is not relevant, and all documents related to it are not material to preparing the defense. Thus, the prosecution does not have to locate the requested documents for Defendants' inspection.

### B. Plazlyte-Related Sterrad Documents

Defendants also request all documents related to any government hospital's evaluation or purchase of a Sterrad sterilizer that refer to or relate to the Plazlyte sterilizer or AbTox. (R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery at 7.) Defendants assert that these documents are "material to preparing the defense" because they may contain information indicating that the "label copy and capabilities of the Plazlyte sterilizer versus the Sterrad sterilizer may be among the criteria considered by hospitals when deciding whether or not to purchase a Sterrad unit." (*Id.*) They also claim that the documents may "include references to the representations made by AbTox employees about the Plazlyte sterilizer and include evidence that these hospitals were not misled regarding the extent of AbTox's label copy." (*Id.*)

Defendants have specifically identified the documents that they want produced but have failed to convincingly demonstrate how these documents will significantly help them prepare their defense. *Gaddis*, 877 F.2d at 611. Defendants currently possess all the documents relating to the government hospitals' evaluation and purchase of a Plazlyte sterilizer yet have not provided this Court with a single document that supports their request.[7] Except for Defendants' assertion that some hospitals conducted "side-by-side" comparisons of the two sterilizers, (*see* R.

---

compliance with those guidelines is not a defense to the charged crime).

[7] We are not suggesting that a defendant must always support a Rule 16 request with factual evidence. We are only finding that Defendants' failure to provide any factual support, given the documents currently in their possession, renders their argument overly speculative and therefore unconvincing.

11

153, Defs.' Mem. in Support of Mot. to Compel Discovery at 6), this Court does not know whether the documents that Defendants currently possess contain any evidence: (1) that the hospitals relied on the Plazlyte sterilizer's label copy or capabilities; (2) that AbTox's representatives did not promote off-label uses; (3) that the hospitals relied on the Sterrad sterilizer's label copy and capabilities; or (4) of the Sterrad manufacturer's representatives' promotional statements. If Defendants possess no such evidence, then it is exceedingly unlikely that the requested Sterrad documents would be material to preparing the defense. If Defendants possess this evidence, then they made a strategic decision not to disclose it in connection with this motion. Either way, they have failed to make a *prima facie* showing of materiality. *See Thompson*, 949 F.2d at 1341. Thus, the prosecution does not have to locate the requested documents for Defendants' inspection.

## III. Federal Rule of Criminal Procedure 17

On February 9, 2005, this Court granted Defendants leave to file subpoenas, pursuant to Federal Rule of Civil Procedure 17(c), to thirteen hospitals.[8] (R. 145, February 9, 2005 Minute Order.) The subpoenas ordered the hospitals, four of which were government hospitals, to produce the following documents by March 11, 2005:

1. Any documents that relate to the use of the Plazlyte Sterilization System manufactured by AbTox, Inc. to sterilize instruments used in ophthalmic surgical procedures.

2. Any documents that relate to patient injuries or adverse outcomes at [the hospital] associated with:
   (a) use of the Plazlyte Sterilization System on the instruments used in an ophthalmic surgical procedure;

---

[8] This Court also expressly stated that the subpoenas "might be broader than I would like" and that the subpoenaed hospitals could object. (*See* February 9, 2005 Transcript at 8.)

(b) use of ethylene oxide ("EtO") sterilization systems on the instruments used in an ophthalmic surgical procedure;
(c) use of steam sterilization systems on the instruments used in an ophthalmic surgical procedure;
(d) use of any other method of sterilization on the instruments used in an ophthalmic surgical procedure;
(e) failure to properly clean, rinse, dry, disinfect or sterilize instruments used in an ophthalmic surgical procedure; or
(f) surgeries that resulted in corneal decompensation.

(R. 135, Defs.' Mot. for Leave to Serve Subpoenas, Ex. A, Subpoena Template.)

To secure leave to serve these subpoenas, Defendants asserted that the requested documents would "support and corroborate" Defendants' good faith belief that the Plazlyte sterilizer could not have caused the eye injuries. (*Id.* at 4.) They claimed that the requested documents would indicate that:

> some of the injuries resulted from use of surgical instruments that were sterilized in steam or EtO rather than Plazlyte, that corneal decompensation could result from residues of cleaning agents on instruments that were not properly rinsed, that at least two of the hospitals that had experienced problems with corneal decompensation were improperly processing the surgical instruments in a way that would result in soap residues being left on the instruments, and that many AbTox customers had been processing instruments used in ophthalmic surgeries in the Plazlyte sterilizer on a routine basis for extended periods of time with no unexpected patient outcomes.

(*Id.*) They also asserted that they were seeking documents "related to internal investigations performed by hospitals that had problems with corneal decompensation."[9] (*Id.*)

---

[9] While orally arguing this motion in court, Defendants stated that they were "seeking information from a number of the hospitals that communicated with the defendants because we think that those materials will help establish what that those communications, in fact, were" and "trying to focus purely on the issue of what did the defendants know at the time." (*See* February 9, 2005 Transcript at 4, 6.) Defendants also stated that "[t]he additional looking that they're doing at the [government hospitals] really goes to the [government hospital's] evaluation of the sterilizer for its decision to purchase it. *It doesn't go to anything related to the eye injuries.*" (See *id.* at 7 (emphasis added).)

13

At least six of the thirteen hospitals complied with the subpoenas, but several of them needed clarification from Defendants about the subpoena's time frame and scope. (R. 171, Defs.' Resp. to Gov't's Mot. to Quash at 8.) These hospitals provided daily sterilization records, gas load log sheets, responsive documents indicating that the Plazlyte sterilizer was used to sterilize ophthalmic instruments, statements claiming lack of records or knowledge regarding eye injuries and sterilization, and documents that had already been produced to the Government. (*Id.*) Furthermore, none of the responding hospitals "reported any eye injuries connected with the method of sterilization of the eye injuries." (*Id.* at 9.) The four government hospitals that were subpoenaed have yet to comply but provided the prosecution with an estimate of how long compliance would require. (R. 154, Gov't's Mot. to Quash at 2-5.) The estimates ranged from 345 man-hours to 1620 man-hours. (*Id.*) The vast majority of this time would be spent reviewing patient files to determine if any adverse outcomes were associated with sterilization. (*Id.*)

For the reasons provided below, we now find that our initial suspicion that the subpoenas were too broad was well-founded. First, the subpoenas sought a huge amount of eye injury information from the government hospitals even though Defendants asserted in open court that the subpoenas do not "go to anything related to the eye injuries." (*See* note 9, *supra*.) Second, none of those hospitals that have responded have "reported any eye injuries connected with the method of sterilization of the eye injuries." (R. 171, Defs.' Resp. to Gov't's Mot. to Quash at 9.) The shifting and unsupported justifications for these subpoenas forces this Court to conclude that the second paragraph of the subpoenas is a "general 'fishing expedition.'" *See Nixon*, 418 U.S. at 700. Accordingly, we quash the second paragraph in its entirety.

14

The only remaining question before this Court is whether we should hold the prosecution in contempt for the government hospitals' failure to comply with the subpoena's first paragraph. We decline to do so. The second paragraph caused the complained-of delay and much of the information sought by the first paragraph may have already been provided to Defendants pursuant to the Rule 16 requests.[10] For these reasons, we decline to hold the prosecution in

---

[10] Defendants requested, pursuant to Rule 16, the production of the following information:

> All records related to AbTox, any employees or representatives of AbTox, the Plazlyte sterilizer or other type of plasma sterilizer from the Veterans Administration (VA), including records from the files of Bob Osburn, Richard Mathers, and any other individual involved in the evaluation and purchase of plasma sterilizers, and files from each of the VA hospitals that used or evaluated the Plazlyte Sterilizer.

(R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery, Ex. A., July 22, 1994 Letter at 2.) The prosecution responded to this request by stating:

> VA documents not relating to the AbTox sterilizer will not be produced. My understanding is that discoverable documents from the VA files have been produced, but it will be necessary for me to consult with the lead VA agent to determine the actual status of this production. He has been on vacation, but is expected to return shortly.

(*Id.*, Ex. C, Aug. 2, 2004 Letter at 2.) Defendants then requested:

> All documents and other information relating to the use of instruments sterilized in a Plazlyte sterilizer in ophthalmic surgeries at VA Medical Center, Northport NY, VA Medical Center, San Francisco, CA, and Harry S. Truman Memorial Veterans Hospital, Colombia, MO;
>
> All documents and other information relating to the investigation of any corneal decompensation incidents at VA Medical Center, Northport, NY, VA Medical Center, San Francisco, CA, and Harry S. Truman Memorial Veterans Hospital, Columbia, MO, including, but not limited to, documents identifying the sterilizer used to sterilize the instruments used on patients that suffered corneal decompensation.

(*Id.*, Ex. E, Dec. 1, 2004 Letter at 3.) The prosecution then supplemented its previous answer in

15

contempt, but order the government hospitals to comply with the first paragraph as quickly as possible. The hospitals can comply with the subpoenas by providing the same type of information that the other hospitals provided: *e.g.*, daily sterilization records, gas load log sheets, or responsive documents indicating that the Plazlyte sterilizer was used to sterilize ophthalmic instruments. (*See* R. 171, Defs.' Resp. to Gov't's Mot. to Quash at 9.)

## IV. Privilege Log

Defendants also request that the prosecution "produce a privilege log identifying withheld documents in sufficient detail for Defendants to evaluate the basis for the privilege assertion."

---

the following manner:

> In May, 1998, the Inspector General's Office made a request to all VA hospitals which had been purchased, leased, or traded for the AbTox Plazlyte sterilizer, directing them to provide copies of all documents relating to the sterilizer. The requests were broad enough to include all AbTox-related VA documents you have asked for from these hospitals, and documents received in response have already been produced to you for inspection and copying. Similar requests were directed to Bob Osburn at VA Central office in Washington and to the VA National Acquisition Center at Hines. Those requests were also broad enough to include the AbTox-related documents you have requested, and the documents obtained have been made available to you for inspection and copying. Accordingly, we are unwilling to duplicate those requests and productions, except in the few cases noted below where you have provided concrete reason to believe a specific document which was not produced once existed.

(*Id.*, Ex. D., Dec. 10, 2004 Letter at 2.) Even though the Rule 16 requests and the first paragraph of the Rule 17 subpoenas appear to seek substantially the same documents, we will not quash this paragraph, *see Bowman Dairy*, 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery."), because we are aware that Defendants believe that the Government's Rule 16 disclosures have been inadequate. (*See* R. 171, Defs.' Resp. to Gov't's Mot. to Quash at 6 n.1 ("The documents that have been produced so far do not appear to be complete records of those agencies.").)

(R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery at 8.) Now that this Court has fully clarified the prosecution's Rule 16 discovery obligations, we order the Government to produce a privilege log by July 15, 2005 that identifies all withheld documents, explains the reason they are being withheld, and contains sufficient detail for Defendants to evaluate the basis for the privilege assertion.

## CONCLUSION

For the reasons provided above, we partially grant and partially deny Defendants' motion to compel discovery, (R. 151-1), deny Defendants' motion for a rule to show cause, (R. 150-1), and partially grant and partially deny the prosecution's motion to quash the four subpoenas, (R. 154-1). This case is set for a status hearing on July 20, 2005 at 9:45 a.m. when a firm trial date will be set. Defendants have asserted that they may file additional motions to compel an additional six categories of discovery if the prosecution does not produce them. (See. R. 153, Defs.' Mem. in Support of Mot. to Compel Discovery at 9-10.) Any additional discovery motions that Defendants intend to file must be filed before the next status hearing.

ENTERED:
Judge Ruben Castillo
United States District Court

**Dated: June 10, 2005**