# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | **No. 03 CR 126** |
| | ) | |
| **ROSS A. CAPUTO and** | ) | **Judge Ruben Castillo** |
| **ROBERT M. RILEY.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On February 22, 2005, Defendants Ross Caputo and Robert Riley ("Defendants")
informed the Government, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), that they
may call Ronald M. Johnson, Robert L. Sheridan, William A. Rutala, and Gordon W. Whitaker
to provide expert testimony at trial. They disclosed each expert's qualifications as well as an
overview of their expected testimony. The Government has filed a motion to compel Defendants
to provide a more specific statement of the reasons and bases underlying the disclosed expert
testimony and a motion *in limine* to exclude some of the disclosed testimony. For the reasons
provided below, we partially grant and partially deny both motions.[1] (R. 181-1; R. 183-1.)

### LEGAL STANDARDS

**I.     Motion to Compel a More Detailed Summary of an Expert Witness's Testimony**

Federal Rule of Criminal Procedure 16(b)(1)(C) requires defendants to give the
Government a written summary of any expert testimony that they intend to use at trial. "This
summary must describe the witness's opinions, the bases and reasons for those opinions, and the

---

[1] A factual overview of this case can be found in our earlier opinions: *United States v.
Caputo*, 288 F. Supp. 2d 912 (N.D. Ill. 2003) and *United States v. Caputo*, 313 F. Supp. 2d 764
(N.D. Ill. 2004). This is the sixth opinion this Court has issued in an effort to allow both sides to
proceed to a fair and efficient trial.

witness's qualifications." Fed. R. Civ. P. 16(b)(1)(C). The level of detail of this summary depends on the complexity of the expert testimony. *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995). For example, a summary of expert testimony concerning the habits of drug dealers can be much shorter and broader than a summary of expert testimony concerning scientific or technical evidence. *Id.* A motion to compel a more detailed summary will only be granted if the summary —in light of the complexity of the expert testimony—does not enable the Government to prepare for cross-examination. *See id.*

## II.    Motion to Exclude Legal Opinions and Legal Conclusions

An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law. *See United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2001) ("Witnesses testify about fact, not law. When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the jury on the proposition."). An expert witness also cannot offer an opinion that amounts to a legal conclusion, *i.e.* testimony that does little more than tell the jury what result to reach, because such testimony is not helpful to the jury and because its probative value is substantially outweighed by the danger of unfair prejudice. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (citing *United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir.1996); *West By & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997) (citing *Woods v. Lecureux*, 110 F.3d 1215, 1219-21 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion--i.e. testimony that does little more than tell the jury what result to reach--is properly excludable under the Rules.")); *United States v.*

*Caputo*, 374 F. Supp. 2d 632, 646 (N.D. Ill. 2005); *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *3 (N.D. Ill. May 26, 2005).

## ANALYSIS

### I.  Motion to Compel

The Government asserts that Defendants must provide a more adequate statement of the bases and reasons that support three of Ronald Johnson's expert opinions, two of Dr. William Rutala's expert opinions, and one of Gordon Whitaker's expert opinions. The Government, however, withdrew its request regarding Whitaker after reading Defendants' responsive brief. (R. 207, Gov't's Reply at 6.) For the reasons provided below, we order Defendants to disclose any additional bases and reasons (if there are additional bases and reasons) that support Johnson's expert opinions and to supplement Dr. Rutala's summary because it does not adequately explain the reasons that support his expert opinion.

#### A.  Ronald Johnson

##### 1.  Deficiency Letters

Defendants disclosed that Johnson will testify that it is his opinion that the deficiency letters sent to Defendants from the FDA's Office of Device Evaluation ("ODE") were not a final determination that a 510(k) premarket notification was required. (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 1.) The Government asserts that Defendants' summary of his expert testimony does not enable it to determine the reasons underlying this opinion. (R. 183, Gov't's Mot. to Compel at 3.) Defendants, however, disclosed the reason for his opinion: "[t]he OC [Office of Compliance], not ODE, has authority to determine whether an enforcement action should be taken against a manufacturer marketing a modified device which the ODE believes []

requires a new 510(k) premarket notification." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 1.) Defendants also state that his opinion is based on his knowledge, experience, and review of documents related to this case. (R. 200, Defs.' Resp. at 5.) Defendants have, therefore, provided a sufficient disclosure. Given the complexity of this FDA regulatory regime, Defendants must, however, disclose any additional reasons, if there are any, underlying this opinion so that the Government can prepare for cross-examination.[2] Johnson will not be able to testify about any undisclosed reasons that support this opinion.

## 2. Application of the FDA's Enforcement Policy

Defendants also disclosed that Johnson will testify that it is his opinion that the OC applied its enforcement policy to AbTox. (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 2.) The Government asserts that Defendants have failed to specifically identify the enforcement policy and failed to explain the reasons that support this opinion. (R. 183, Gov't's Mot. to Compel at 3.) Defendants disclosed that the reason for his opinion is that "OC did not issue a Warning Letter to AbTox regarding the modifications to the marketed Plazlyte sterilizer." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 2.) Defendants also asserted in their response brief that Johnson's opinion is based on "his review of the FDA's course of action regarding AbTox" and other "internal FDA documents concerning AbTox." (R. 200, Defs.' Resp. at 6.) Defendants have provided a sufficient disclosure. If, however, the enforcement policy about which Johnson will testify is different than the enforcement policy described in the 1994 Memorandum that was the subject of Defendants' last reconsideration motion, (see R. 198,

---

[2] Johnson's expert testimony about deficiency letters must comport with our ruling regarding Sheridan's testimony about deficiency letters. *See* Section II(B)(1).

Defs.' Mem. in Supp. of Reconsideration), Defendants must specifically identify and explain the undisclosed policy. Furthermore, if there are any additional reasons that support this opinion, then Defendants must disclose them so that the Government can prepare for cross-examination. Johnson will not be able to testify about any undisclosed reasons that support this opinion.

### 3.   Manufacturer's Statements About FDA Clearance

Defendants also disclosed that Johnson will testify that it is his opinion that "a device manufacturer may state that it has clearance to market a modified device when this enforcement policy is being applied." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 2.) The Government asserts that Defendants should be compelled to state the statute, regulation, published policy, or other basis that supports this opinion. (R. 183, Gov't's Mot. to Compel at 4.) Defendants claim that this opinion is based on Johnson's "understanding, based on his FDA experience, of how the policy he personally implemented at the FDA was expected to function." (R. 199, Defs.' Resp. at 4 (emphasis in original).) Johnson's FDA experience—including three years as Director of OC where he developed and implemented this policy—qualifies him to give an opinion on how this enforcement policy functions.[3] (See R. 183, Gov't's Mot. to Compel, Ex.

---

[3] The Government also asserts that Johnson is not qualified to give this opinion and that, even if he is qualified, this opinion is not helpful to the jury. (See R. 183, Gov't's Mot. to Compel at 3; R. 181, Gov't's Mot. in Limine at 5; R. 207, Gov't's Reply at 3-4.) First, the Government asserts that Johnson cannot opine as to whether the enforcement policy was applied to Defendants because he was not working at the OC when the policy arguably was applied to Defendants. While Johnson was not working at the OC during the relevant time period, he has thirty years of experience working for the FDA and was the Director of the OC from 1991 to 1994—a few years before the relevant time period. He also helped develop and implement the enforcement policy. Given these qualifications, this Court does not need to hold a *Daubert* hearing to determine that Johnson is qualified to give this opinion. The Government's argument goes to the weight of Johnson's opinion, not to its admissibility. *See Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 701 n.4 (7th Cir. 2003) The Government will have a full opportunity to cross-examine Johnson about the basis and reasons for his opinion and to bring its own fact and

2, Johnson Resume & R. 200, Defs.' Resp. at 4.) Thus, Defendants have sufficiently disclosed the bases underlying this opinion. Once again, if Johnson is relying on anything other than his personal understanding of this enforcement policy, Defendants must disclose these additional bases so that the Government can prepare for cross-examination. Johnson will not be able to testify about any undisclosed reasons that support this opinion.

## B.   Dr. William Rutala

### 1.   Scientific Tests

Defendants disclosed that Dr. Rutala will testify that it is his opinion that "AbTox conducted scientific biological and safety tests that established that the modifications to the sterilizer could not have significantly affected safety or effectiveness." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 4.) The Government asserts that Defendants should be compelled to specify the tests on which Dr. Rutala relied. (R. 183, Gov't's Mot. to Compel at 4-5.) Defendants assert that they disclosed the basis of Dr. Rutala's opinion because their disclosure explained that "[t]hose tests demonstrated that the modified Plazlyte sterilizer was as effective against a broad range of microorganisms as the unmodified sterilizer." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 4.) Defendants, however, never identified the tests on which Dr. Rutala relied. It is exceedingly difficult to cross-examine a scientific expert witness about the results of a scientific test without an opportunity to first review the test giving rise to

expert witnesses. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Second, the Government asserts that Johnson's opinion will be unhelpful to the jury because he is in no better position than the jury to make it. We disagree. The application of this enforcement policy is an exceedingly complex issue. His expert opinion will help the jury understand whether the enforcement policy was applied to Defendants.

the results. Even though Defendants assert that the Government's request "is tantamount to an interrogatory going far beyond a statement of the basis and reason for his opinion," (R. 200, Defs.' Reply at 7), we find that the Government cannot adequately cross-examine Dr. Rutala unless he discloses the specific tests that "demonstrated that the modified Plazlyte sterilizer was as effective against a broad range of microorganisms as the unmodified sterilizer."[4]

Defendants' request that we also compel the Government to supplement its disclosure that its expert witness—James Gibson—will testify that it is his opinion that "[t]he three tests relied on by AbTox's former counsel to justify the 'no 510(k) decision' are not adequate to demonstrate the equivalence of the two sterilizers . . . [because] [t]wo are meaningless, while the third merely demonstrates the microorganisms were killed under circumstances of the particular test . . . [but] [t]he test was conducted 'too far down the curve' to generate real numbers which could be extrapolated." (R. 200, Defs.' Resp. at 8 & Ex. C, Gov't's Disclosure at 2.) The Government asserts that Defendants' request is premature because they have not responded to the Government's offer to supplement its disclosures upon the receipt of specific written requests. (R. 207, Gov't's Reply at 6-7.) This Court's primary interest is materially and fairly advancing this case, so we will address Defendants' arguments that the Government's expert disclosures are similarly deficient instead of waiting for Defendants to file the inevitable motion to compel.

---

[4] Defendants also assert that this supplemental disclosure is not necessary because "the Government has access to the same scientific tests . . . that Defendants have access to." (R. 200, Defs.' Resp. at 8.) We are unpersuaded that the fact that the Government knows about the entire "body of data that Dr. Rutala considered," (see id.), excuses Dr. Rutala from disclosing the tests on which he relied. Rule 16(b)(1)(C) requires Defendants to describe the bases for Dr. Rutala's opinions. Merely stating that Dr. Rutala relied on some unknown number of tests that the Government surely knows about does not describe the bases for his opinion. We will not require the Government to make an educated guess about the tests that support Dr. Rutala's expert opinion.

7

Accordingly, we also order the Government to supplement Gibson's disclosure by specifically identifying the three tests on which he relied and by providing a more thorough explanation of what "too far down the curve" means.

## 2. Germaneness of Two AbTox Protocols

Defendants also disclosed that Dr. Rutala will testify that it is his opinion that AbTox Protocols 94-023 and 94-024 were not germane to AbTox's May 1995 510(k) submission seeking clearance for a shorter sterilization time. (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 5.) The Government asserts that Dr. Rutala should be compelled to explain the reasons supporting this opinion.[5] (R. 183, Gov't's Mot. to Compel at 4.) Defendants claim that they have already disclosed the basis for Dr. Rutala's opinion: his knowledge, experience, and his review of the May 1995 510(k) submission and the two protocols in question. (R. 200, Defs.' Resp. at 9.) Defendants disclosed that Dr. Rutala reviewed the two protocols in question and the May 1995 510(k) submission, but have not disclosed a reason as to why it is Dr. Rutala's opinion that the protocols are not germane to the submission. Dr. Rutala's scientific knowledge and experience permit him to give an opinion, but they do not explain the reason supporting his opinion. Defendants must, therefore, disclose the reasons that Dr. Rutala concluded that the two protocols are not germane to the submission.[6]

---

[5] The Government also asserts that Dr. Rutala must disclose what he means when he uses the word "germane." (R. 183, Gov't's Mot. to Compel at 4.) Defendants explain that the word germane simply means "relevant, pertinent." (R. 200, Defs.' Resp. at 9.)

[6] Defendants claim that the Government also failed to disclose the reason underlying its expert witness's opinion that the protocols are material to the submission. (R. 200, Defs.' Resp. at 9-10.) We disagree. The Government disclosed that it's expert will testify that "[i]n light of the request of the May 1995 510(k) submission for a reduced cycle time, the failures at one hour and thirty minute cycle times revealed by reports 94-023 and 94-024 were material, and should

8

## II. Motion to Exclude

The Government asserts that this Court should exclude three of Ronald Johnson's expert opinions and four of Robert Sheridan's expert opinions because they are impermissible legal opinions. For the reasons provided below, we find that one of Johnson's expert opinions and three of Sheridan's expert opinions contain impermissible legal opinions and that two of Johnson's expert opinions and one of Sheridan's expert opinions contain impermissible legal conclusions. We therefore exclude this testimony. Prior to the opening of evidence, this Court plans to give the jury a comprehensive, preliminary instruction concerning the legal requirements of the Food, Drug, and Cosmetic Act and of the nature of the regulatory scheme it establishes. Instead of giving expert legal opinions, Johnson and Sheridan can refer to the jury instructions to explain the necessary legal principles.

### A. Ronald Johnson

#### 1. Application of the FDA's Enforcement Policy

Defendants disclosed that Johnson will testify that it is his opinion that the "OC applied its enforcement policy regarding device modifications to AbTox allowing it to continue to market the Plazlyte sterilizer because OC did not issue a Warning Letter to AbTox regarding the modifications to the marketed Plazlyte sterilizer." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 1.) The Government asserts that it cannot determine whether this opinion is a factual or legal opinion. (R. 181, Gov't's Mot. in Limine at 4-5.) Defendants assert that this

---

have been disclosed to the FDA." (*Id.*, Ex. C at 2.) The Government disclosed the reason underlying its expert's opinion: "the failures at one hour and thirty minute cycle times." Consistent with our other rulings, the Government should supplement this disclosure if there are any additional reasons that support this opinion.

opinion "is not an opinion about the meaning of statutes or regulations" and "is based on the facts of the case." (R. 199, Defs.'s Resp. at 3.)

We find that Johnson's testimony contains two factual opinions and one legal conclusion. The first factual opinion is that the FDA's enforcement policy permitted manufacturers to continue to market modified devices. The second factual opinion is that the OC applied this enforcement policy to AbTox. His testimony, however, also contains the impermissible legal conclusion that AbTox could continue to market the Plazlyte sterilizer. Were he to give this testimony, Johnson would essentially be telling the jury that Defendants did not violate 21 U.S.C. § 331(a) (which prohibits the introduction of an adulterated or misbranded medical device into interstate commerce) because they could continue to market the modified device. *See Waymire*, 114 F.3d at 652. Thus, Johnson can describe his understanding of the FDA's enforcement policy, he can give his opinion as to whether it was applied to Defendants, he can explain the reasons he believes it was applied to Defendants, but he cannot give his opinion as to what the application of this policy did or did not permit Defendants to do.

## 2. Manufacturer's Statements about FDA Clearance

Defendants disclosed that Johnson would testify that it is his opinion that "a device manufacturer may state that it has clearance to market a modified device when this enforcement policy is being applied." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 1.) The Government asserts that this opinion is a legal opinion that misstates the law. (*Id.* at 5-6.) Defendants assert that this opinion is not a legal opinion; they claim that it is "Johnson's understanding, based on his FDA experience, of how the policy he personally implemented at the FDA was expected to function." (R. 199, Defs.' Resp. at 4 (emphasis in original).) We agree

10

with Defendants that Johnson's opinion is "factual in nature" because it is his understanding of the FDA's enforcement policy. If this enforcement policy permitted manufacturers to state that they had FDA clearance to market their device, then the jury is entitled to hear this testimony. Consistent with our previous ruling, he may not, however, testify that Defendants could state that they had clearance to market the Plazlyte sterilizer. Were Johnson to give this testimony, he would essentially be telling the jury that Defendants did not commit mail or wire fraud because they did not make an intentional misstatement of present fact. Again, Johnson can describe his understanding of the FDA's enforcement policy, but he cannot give his opinion as to what the application of this policy did or did not permit Defendants to do.

### 3. Advisory Nature of FDA Guidance Documents

Defendants also disclosed that Johnson will testify that "FDA guidance documents are advisory, are not binding on manufacturers, and cannot be used as the basis for an enforcement action against a manufacturer." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 1.) The Government asserts that this opinion should be excluded because it is a "pure opinion of law." (*Id.* at 6.) Defendants do not dispute that the non-binding nature of FDA guidance documents is a legal fact, rather they assert that Johnson should be permitted to "reference" the non-binding nature of FDA guidance documents so that the jury can understand the nature and scope of the FDA's enforcement policy. (R. Defs.' Resp. at 8.)

We agree with the Government that Johnson's testimony is a legal opinion that should and will be included in this Court's jury instructions. We also agree with Defendants, however, that Johnson will not be able to properly explain the FDA's enforcement policy without referring to the non-binding nature of FDA guidance documents. Accordingly, prior to the opening of

evidence this Court plans to give the jury a comprehensive, preliminary instruction concerning the legal requirements of the Food, Drug, and Cosmetic Act and of the nature of the regulatory scheme it establishes. Rather than state his legal opinion, Johnson can refer to the jury instructions to explain the necessary legal principles. This will permit him to provide his expert testimony without subverting this Court's role of instructing the jury.[7]

### B.   Robert Sheridan

#### 1.   Deficiency Letters

Defendants disclosed that Sheridan will testify that it is his opinion that "the deficiency letters ODE issued to AbTox did not establish that AbTox needed to file a 510(k) pre-market notification for the modified sterilizer and did not prevent AbTox from marketing the device because ODE lacks authority to take enforcement actions against a device manufacturer." (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 3.) The Government asserts that this opinion is an erroneous statement of the law. (*Id.* at 7.) Defendants, however, assert that Sheridan's testimony "will assist a jury in understanding the structure of the FDA and, in particular, will aid in putting the deficiency letters received by AbTox into the proper context." (R. 199, Defs.' Resp. at 6.) We agree that Sheridan's testimony about the structure of the FDA and deficiency letters will assist the jury, but we disagree that his testimony about what the specific deficiency letters sent to Defendants did not establish or did not prevent will similarly assist the jury. Were Sheridan permitted to give this testimony to the jury, he would essentially

---

[7] Defendants disclosed that Robert Sheridan will also testify that FDA guidance documents are not binding.   (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 4.) As with Johnson, Sheridan cannot give this legal opinion but must refer to the jury instructions to explain the necessary legal principles.

be telling them that Defendants could continue to market the modified device without filing a 510(k) pre-market notification. Sheridan can describe his understanding of the deficiency letters, but he cannot give his opinion as to what the specific deficiency letters that were sent to Defendants did or did not establish or did or did not permit them to do.

## 2. Health Care Providers

Defendants disclosed that Sheridan will testify that it is his opinion that health care providers can, without violating the Food, Drug, and Cosmetic Act, use cleared medical devices for any purpose and may determine how they will use a medical device based on their own professional judgment, validation studies, consultations with other hospitals, or consultations with the manufacturer. (R. 181, Gov't's Mot. in Limine, Ex. 1, Defs.' Disclosure at 3.) They also disclosed that Sheridan will testify that "manufacturers may advise hospitals on their obligations to validate as instructed by the AARI-TIR," which provides standards on the sterilization of re-usable medical instruments. (*Id.*) The Government asserts that this testimony is impermissible because it is comprised of legal opinions that should be included in jury instructions. (*Id.* at 8.) Defendants claim that this testimony will explain "industry standards and customs as well as provide context for Mr. Sheridan's explanation of the FDA framework." (R. 199, Defs.' Resp. at 7.) Defendants assert that "to be able to fully explain validation standards, Sheridan must be able to testify about health care practitioner's freedom to use a medical device for any purpose." (*Id.*)

We agree with the Government that Sheridan's testimony is a legal opinion that should and will be included in the Court's jury instructions. We also agree with Defendants, however, that Sheridan will not be able to place the conversations that Defendants had with health care

practitioners in their proper context nor could he properly explain the relevant validation standards without informing the jury about the background legal principles. Accordingly, prior to the opening of evidence this Court plans to give the jury a comprehensive, preliminary instruction concerning the legal requirements of the Food, Drug, and Cosmetic Act and of the nature of the regulatory scheme it establishes. Rather than state his legal opinion, Sheridan can refer to the jury instructions to explain the necessary legal principles. This will permit him to provide his expert testimony without subverting this Court's role of instructing the jury.

## CONCLUSION

For the reasons provided above, we partially grant and partially deny the Government's motion to compel and motion *in limine*. (R. 181-1; R. 183-1.)

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: August 15, 2005**